HENRY A. ENGLES, Sheriff &c., *against* DAY and others.

APPEAL *from Independence Circuit Court.*

That provision of the Revenue Law, in section 45 of the chapter in the Revised Statutes on Revenue, which imposes a tax where any person shall commence merchandising, or bring in a new stock of goods during the year, was intended to tax the whole amount of merchandise introduced into the State at different periods, and not merely the actual cash capital invested, or the original stock of goods.

Every new stock therefore, brought in during the year, must be taxed, whether purchased with cash or on credit.

Where the declaration commences, "A. B. Sheriff, &c., complains, &c., that they render unto the said plantiff," &c., it is a suit brought by him as an individual, and not in his official character: and if the gravamen of the action is the non-payment of taxes, the declaration is bad on demurrer.

This was an action of debt instituted by "Henry A. Engles, Sheriff and Collector of the revenue for the county of Independence," against Day and others. The declaration alleged that on the 28th of June, 1839, the defendants brought into the county of Independence, a stock of merchandise worth $10,000, but did not report the same to the Sheriff for taxation, and claimed eight hundred dollars, as the tax upon the stock of goods.

To this declaration the defendants filed three pleas. The defence set up in each, was substantially the same, and amounted to this: That immediately after the first of January, 1839, the defendants having entered into partnership, with a capital of six thousand dollars, gave in that capital for taxation to the plaintiff as Sheriff; and were taxed therefor, for the year 1839, that they afterwards employed no additional capital, nor brought any further *capital* into the county; and that the stock of goods mentioned in the declaration was bought with the same capital.

To these pleas the plaintiff demurred. His demurrers were over-ruled, and final judgment given against him.

R. W. JOHNSON, Atto. Gen. for the appellant:

In the month of January, 1839, the defendants, merchants, imported a stock of goods, in which was vested a capital of six thousand

35 -

dollars, and afterwards, in the month of June, of the same year, the defendants imported a certain other stock of goods, in which was vested the self-same capital used for the purchase of the January stock.

By provision of the Revenue Law of the State of Arkansas, (See Rev. St. p. 679, sec. 45.) " When any person shall commence merchandising," &c.

The defendants gave in, for taxation, the capital of six thousand dollars, invested in the January stock of importations. The defendants having disposed of the January stock, by a prompt and easy sale, in June following imported a new stock of goods, *investing therein* $6,000 more, which they aver to be the *self-same capital* taxed under the January importation, and they refused, upon the new stock imported in June, to pay the tax demanded by the collector.

A question of construction here arises upon the 45th section of the Revenue Law. Does the statute contemplate a tax upon the *actual capital* invested in merchandise, or a tax upon the *merchandise itself* imported, referring to the *capital* merely as a medium through which that tax may be rendered uniform and certain?

The defendants imported in January, $6,000 capital in merchandise; in June they imported, with the same capital, another $6,000 worth, in merchandise. These, it is clear, are transactions to the amount of $12,000, by means whereof, there are $12,000 worth of merchandise in the State of Arkansas, between the 1st of January, and the latter part of June.

It follows clearly, that it is $12,000 of *capital* invested in merchandise, which is a subject of taxation somewhere; and it being the intention of the law to impose an equal tax, the only reasonable construction of this transaction is, (if capital be the object of taxation,) that the sale of the $6,000 January importation, was a sale of the privileged capital, (that is, capital upon which tax is paid,) and that any future investment in merchandise, to be imported, must be regarded as the investment of *new capital*, so far as the revenue law of Arkansas is concerned. If this be not the construction to be given to the term *capital*, as it exists upon the statute, the law leads clearly to many vices, and much that is absurd. By placing $6,000 capital in

Engles, Sheriff, &c., *against* Day and others.

the hands of a third person, a capital of $50,000 dollars, or more, may be used in merchandise, clear of taxation, in the face of the Statutes of Revenue, and its officers. A is a merchant of this State, B invests a capital of $6,000 in merchandise, and after importation, and tax paid, sells his stock to A. This capital of $6,000 is now privileged; hej imports, by contract, for all the old merchants, and sells to them as fast as he can transmit from the borders of the State, and an unlimited amount of capital is invested in merchandise, free from taxation. Since, how could you collect tax upon A on those articles purchased of B, the tax upon the whole capital is already paid; or it would be proper to tax the *second* capital invested in the same goods. Does not the tariff upon the first purchase fall upon the second, and should the second pay tariff twice?

The capital of the defendants, in their June importation, if termed the same original capital used in the January importation, is then a privileged capital: (provided the law contemplates taxation of *capital* rather than merchandise—a privileged capital, to fetch and carry—a vessel of fraud upon the revenue; a violation of the manifest design of the Legislature, and the clear intent and meaning of the constitution, (p. 38. sec. 2 of R. S.), which provides, " that all property subject to taxation, shall be taxed according to its value, making the same equal and uniform," and further, "that no one species of property, for which a tax may be collected, shall be taxed higher than another species of property of the same value." And which then makes a special exemption against merchants, but certainly not with a view that they *should be spared* from taxation; and we see that merchants pay tax upon goods, by the same rule that governs in all other matters of taxation. See R. S. p. 673, S. 2.

If then the statute contemplates a *tax* to be laid upon the *capital* invested in importing goods, the subsequent sale of the goods must be construed to be a sale of the *capital itself*, upon which the tax was paid; or a third person (not already a trading merchant), who purchases those goods to commence trade upon, must pay a second tariff for the honor of becoming a merchant, and, at the same time, a privileged capital must be created, through which, ten fold its own value may be smuggled in, for the benefit of men already merchants, and

from whom no tax could be collected for goods imported under the privileged capital, to the destruction of the revenue of the State, and the violation of the clear intent and meaning of the constitution.

The true construction of this Statute on Revenue (it is with deference suggested), is that *merchandise itself* is the object of taxation, and not the *capital invested therein;* that *capital,* as used in the statute, is referred to, merely as an accurate medium through which the *tax upon the merchandise may be rendered uniform and certain,* not as the prime object of taxation itself. Nor does this construction lead to any result unconstitutional in its character, as for instance, the levy of a second *annual tax,* upon the same piece of property, nor does it thereby become an engine of injustice to the defendants, (for they reaped the fair profits of their first stock), or to any party whatever; nor does it lead to any after complication of construction to avoid destruction of the State revenue, nor to any unequal or, inconsistent action of the laws of the State, upon our own citizens engaged in commercial pursuits.

DICKINSON, J., delivered the opinion of the court:

The object of the Legislature was to raise a revenue upon each and every new stock of merchandise brought into the State. The act under which the assessment is made, though loosely worded, is sufficiently explicit. Such a construction as is contended for by the defendants in error, would, in a great degree, defeat the object in view. A question as to what is capital would, from the great diversity of opionion entertained upon it, involve us, at once, in doubt and difficulty. We shall not therefore, attempt to elucidate it. Credit, with a merchant, is all-important; and, with it, properly regulated and preserved by promptness and punctuality, he can operate effectually to any extent he desires. The fact is of frequent occurrence, that men with a knowledge of business, accompanied with industry, frugality, and integrity, successfully engage in merchandising, and introduce large stocks, relying wholly upon their sales and returns, to meet their liabilities. If a merchant was subject to tax merely upon the actual cash capital which he employed during the year, it would place him, who purchased upon a credit, in a better situation than him

Engles, Sheriff, &c., *agaist* Day and others.

who paid down, and enable the artful to introduce merchandise to an indefinite amount, and thereby enjoy greater advantages than one whose operations were limited to his actual cash capital. Again, a man known to possess funds to a large amount, could keep them in his pocket, or use them in some other way, and, from his acknowledged wealth, purchase upon credit, and evade the payment of any tax upon the ground that he had no capital employed. Or a person with $6,000, by buying and selling at short periods, and re-purchasing, could, from time to time, during the year, introduce merchandise and supply all other dealers. If called upon for the tax, he would answer that he commenced with but $6,000 capital, upon which, he had paid the tax, that the new importation was the proceeds of the same $6,000 with which the first goods were purchased. If this argument was to prevail, he might sell the new stock to another person, who would, upon the same principle, be also exonerated. For, if the fact of the capital having originally been taxed, is a defence to the one, it is to the other. Such a construction would be unfounded in reason and justice, and cannot be sustained by sound argument, or a fair and reasonable interpretation of the act by which the tax is imposed; for, it would, at once, destroy the degree of equality and uniformity upon which the constitution requires the revenue to be based. The 45th Sec. Rev. St. Revenue, 679, is, " When any person shall commence merchandising, or bring in his *new stock* of merchandise into any county in this State," &c.

And the 46th Section, further declares that, "If any such person shall not, within thirty days after the time of *commencing* merchandising, or bringing in his *new stock* of merchandise, report," &c. If it had been intended to refer to the *cash capital* alone, actually used or employed, but few words would have been necessary so to confine it.

But as, on the contrary, the merchandise introduced at the *commencement*, as well as subsequent *new stock*, for the continuation of business during the same year, are expressly mentioned, we cannot doubt but that it was the *amount* of merchandise which was to be taxed, and not merely the amount of funds actually paid at the commencement. As without revenue, the State would be unable to provide the means for protecting its citizens, while engaged in their law-

ful pursuits, the act must be so construed, that none shall be permitted to elude it: for it is only by each one paying his due proportion towards the necessary expenditures, that the State is enabled to keep up that perfect system of police, in the administration of its laws, so necessary in all well regulated governments. That proportion must depend upon the nature of the pursuit, the degree of protection and assistance required, its profits, advantages, and privileges. He whose business operations are extended far and wide, and embrace many objects, deriving a benefit from each and every one, should, upon principles of equity and justice, as regards the extent of his dues to government, be placed upon the same footing of equality with him whose means are more limited. We are of opinion, that it was the intention of the General Assembly, to tax the merchandise introduced during the year, and that the defendants in error are liable upon the new stock introduced by them. The plaintiff in error, having demurred to the defendant's pleas, and relied upon his demurrer, the rule that the court will consider the whole record, and give judgment for the party who, on the whole, appears to be entitled to it, here applies; and it becomes necessary to ascertain, first, if the declaration is good, for, if not, a bad plea is a sufficient answer to a bad declaration. The object of all judicial proceedings is, to arrive at legal certainty, and by this is meant, certainty as to the names and characters of the parties that sue, or are sued; certanty in the cause of action, in the breaches assigned, the issues, the verdict, the judgment, and all its incidents. This can only be arrived at by a fair and reasonable interpretation of the words used, and their intendment, of the context, and the subject matter in dispute, of the evils complained of, and the remedies to be applied. It follows, then, from these rules, that the plaintiff must show whether he sues in his own right, or in his representative character; if in the latter, he should be named in his declaration by his title of office. For instance, a suit by a sheriff, a collector, by a guardian, an heir, an executor or administrator; for, without such an allegation, or one of equal certainty, a party cannot maintain an action in his representative or official character. *Hicks vs. Brown,* 1 *Ark.* 239; 1 *Salk.* 296; 2 *Bos. and Pull.* 421; 1 *Com. Dig. adm'r F.* 20. The same principle holds as to defendants. The

words sheriff, collector, administrator, executor, &c., without intro-
ducing the other words, showing that the suit is brought *as such*, would
be considered as surplusage, simply a description of the person, as
idle and unmeaning words.   The declaration is, " Henry A. Engles,
Sheriff and Collector of the revenue, for the county," &c., " com-
plains," &c., that " they render unto the said plaintiff the sum," &c.,
and nowhere in the breach is he named, other than " the said plain-
tiff."   It is evident that there is no averment or allegation in the de-
claration, that Henry A. Engles, as Sheriff, &c., sues, or any words tan-
tamount or equivalent thereto.   And, it is equally certain that unless
there is some such  allegation, he cannot maintain an action in his
representative or official character.   The term, *as Sheriff*, is not a
term of *form* but of substance; essentially entering into the nature of
the averment, and constituting the gist of the action.   The difference
between " the Sheriff and Collector," and the direct averment *as
Sheriff* and *as Collector*, must be too plain to require further illustra-
tion.   In the one instance, Sheriff and Collector are mere words of
description, identifying the person; in the other, the terms *as Sheriff*,
and *as Collector*, have but one meaning which is fixed by law, and that
is, that the action is brought in his official or representative character.
The judgment is affirmed.